IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–00569–CMA–KMT

MONSTEROPS LLC, a Colorado limited liability company

    Plaintiff,

v.

MICHAEL SCHINDELE, an individual, and
NATURALLY DRIVEN, LLC, a Florida limited liability company,

    Defendants.

---

# ORDER

---

Before the court is Defendant Michael Schindele's "Motion to Stay Proceedings." (["Mot."], Doc. No. 40.) In his Motion, Defendant Schindele asks that this case be stayed for twelve months, while he serves a prison sentence for an unrelated criminal offense. Plaintiff has responded in opposition, Defendant Schindele has replied, and Plaintiff has surreplied. (["Resp."], Doc. No. 50; ["Reply"], Doc. No. 53; ["Surreply"], Doc. No. 54 Ex. 1.) Defendant Naturally Driven, LLC has not responded to Defendant Schindele's motion.[1]

Plaintiff Monsterops, LLC produces and sells testosterone-boosting/male enhancement products under the ALPHA MALE trademark. (["Compl."], Doc. No. 1 at ¶ 8.) Defendant Michael Schindele previously sold similar products under the trademarks, ALPHA MALE XL

---

[1] Defendant Schindele advises that Defendant Naturally Driven, LLC "has indicated that they do not object" to the motion to stay. (Mot. 1-2.)

and ALPHA XL. (*Id.* at ¶¶ 13, 15.) It is Plaintiff's contention that Defendant Schindele's use of the ALPHA MALE XL trademark infringed upon its own ALPHA MALE trademark. (*Id.* at ¶ 13.)

On February 13, 2018, Plaintiff and Defendant Schindele executed a Confidential Settlement and Release Agreement ["the Agreement"], by which they attempted to resolve their trademark dispute. (*Id.* at ¶ 18, Ex. B.) Pursuant to the Agreement, Defendant Schindele permanently ceased use of the ALPHA MALE XL trademark. (*Id.* at ¶ 19, Ex. B at ¶ 1.) Plaintiff, for its part, permitted Defendant Schindele to continue to use the ALPHA XL trademark to sell testosterone-boosting/male-enhancement products, in exchange for a monthly payment. (*Id.* at ¶¶ 20-21, Ex. B at ¶¶ 2, 4.) The Agreement stipulated that Defendant Schindele's payment obligations would bind any and all assignees and successors in interest. (*Id.* at ¶ 23, Ex. B at 10(c).)

According to the Complaint, nine months later, on November 7, 2018, Defendant Schindele sold his ALPHA XL assets to Defendant Naturally Driven, LLC. (*Id.* at ¶ 25.) In connection with that sale, Defendant Schindele also assigned to Defendant Naturally Driven, LLC a pending intent to use ["ITU"] application for the ALPHA XL trademark. (*Id.* at ¶¶ 34, 36, Ex. C.) Shortly thereafter, on January 3, 2019, Defendant Naturally Driven, LLC reportedly informed Plaintiff that it had "no duty to continue payments due under the [A]greement." (*Id.* at ¶ 28.)

On February 26, 2019, Plaintiff filed this lawsuit against Defendants, asserting claims for breach of contract and unjust enrichment, and seeking declarations that Defendant Naturally Driven, LLC is bound by the terms of the Agreement, and that Defendant Schindele's

2

assignment of the ITU application was invalid.  (*Id.* at ¶¶ 46-83.)  Defendants, in response, asserted cross-claims against each other for contractual indemnification.  (Doc. No. 32-1 at 9-12; Doc. No. 35 at ¶¶ 29-38.)  Defendant Naturally Driven, LLC asserted additional cross-claims against Defendant Schindele for intentional misrepresentation, negligent misrepresentation, and breach of contract.  (Doc. No. 35 at ¶¶ 39-70.)

In the interim, on March 11, 2019, the United States District Court for the Western District of Missouri sentenced Defendant Schindele to a maximum of thirty-seven months of confinement for an unrelated criminal offense.  (Mot. 2-3, Ex. A.)  Two months later, on May 6, 2019, Defendant Schindele began serving his prison sentence at the Edgefield Federal Correction Institution in Edgefield, South Carolina.  (*Id.* at 3.)  As of this date, Defendant Schindele remains incarcerated.  (*Id.*)

On August 5, 2019, Defendant Schindele filed a motion to stay this case, in its entirety, for a period of twelve months, because of his imprisonment.  (*Id.* at 1.)  In that Motion, Defendant Schindele asserts that, due to his current prison conditions, he is unable to fully participate in his own defense in this case.  (*Id.* at 4.)  He contends, for that reason, that moving forward with this case would be a violation of his Fourteenth Amendment due process rights.  (*Id.*)  Specifically, Defendant Schindele complains that he has suffered "severely restrict[ed] [] access to legal resources . . . and materials needed to effectively defend against the claims in this case."  (*Id.*)  He states that he "has no access to documentation, computers, or personal phones, which limits [his] ability to adequately respond to any discovery requests at this time."  (*Id.*)  Defendant Schindele complains that, since his incarceration began, the other parties in this lawsuit have "served broad discovery requests" upon him.  (*Id.* at 2.)  In addition, Defendant

Schindele complains that Defendant Naturally Drive, LLC has asserted cross-claims against him that "broaden[] the scope of the case significantly," and that "require even more in-depth discovery on topics [he] was not anticipating at the time of his surrender." (*Id.* at 2, 9.)

In the Motion, Defendant Schindele's lawyer also alleges that her access to her client has been "severely restricted." (*Id.* at 2.) She claims that she was unable to communicate with her client, at all, until July 2019, and that, since that time, she has only been able to communicate with him intermittently via email. (*Id.* at 2-4.) Defendant Schindele's lawyer complains that the prison email system "only allows for a limited number of text and no attachments to be sent," and that, as a result, "the counter-crossclaims had to be sent to [Defendant] Schindele in a series of four emails." (*Id.* at 3-4.) She asserts that "the amount of time that lags in-between [Defendant] Schindele receiving [discovery request] documents through the [prison mail] system and his ability to respond among his other duties required of him during the day in prison is a problem and necessarily delays the discovery process." (*Id.* at 4.) In addition, Defendant Schindele's attorney complains that visitation of her client at the South Carolina prison facility "would be extremely costly and burdensome," because she resides in Colorado. (*Id.*)

Plaintiff, in response, does not object to a stay of the cross-claims asserted by Defendants in this case. (Resp. 4.) It contends, however, that Defendant Schindele has failed to show that a stay is warranted as to its own claims. (*Id.*) Specifically, Plaintiff argues that there is no evidence to show that Defendant Schindele has had difficulty communicating with his lawyer, or that he has raised such complaints to prison officials. (*Id.* at 3, 11.) Plaintiff also argues that the requested length of the stay is "speculative," because there is no evidence to suggest that Defendant Schindele will be even be released from prison within one year. (*Id.* at 4.) Plaintiff

maintains that Defendant Schindele will not be unduly burdened if its claims against him proceed, because those claims remain "unchanged," and because the discovery it requests from him is "narrowly-tailored" to those claims. (*Id.* at 8-9.)

The Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings. Rule 26(c), however, provides that, upon a showing of good cause, a court may "issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Further, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

In this District, a stay of proceedings is generally disfavored. *See, e.g.*, *Rocha v. CCF Admin.*, No. 09-cv-01432, 2010 WL 291966, at *1 (D. Colo. Jan. 20, 2010); *Jackson v. Denver Water Bd.*, No. 08-cv-01984, at *1 (D. Colo. Dec. 15, 2008); *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419, at *2 (D. Colo. Mar. 2, 2007). Nevertheless, the decision whether to stay a case rests firmly within the sound discretion of the court. *United Steelworkers of Am. v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (quoting *Landis*, 299 U.S. at 254).

In ruling on a motion to stay, five factors are generally considered: "(1) [the] plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to [the] plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934, 2006 WL 8949955, at *2 (D. Colo. Mar. 30, 2006); *see United Steelworkers*, 322 F.3d at 1227.

5

In this case, a balance of the *String Cheese* factors weighs against the imposition of a stay. First, given the nature of the allegations in the Complaint, Plaintiff will likely suffer prejudice if this case is delayed for one year. Plaintiff alleges that Defendants have failed to make contractually obligated monthly payments owed to it under the Settlement Agreement for at least eight months, and that it relies on those payments for its ongoing business operations. (Compl. ¶¶ 28, 32, 77-83; Resp. 7-8.) In addition, Plaintiff alleges that Defendants' infringement of its ALPHA MALE trademark has continued unabated. (Compl. ¶¶ 41-45; Resp. 7.) If a one-year stay is imposed in this case, Plaintiff's damages will continue to accrue, and its business will potentially suffer further harm, as a result. *See Gold, Inc. v. H.I.S. Juveniles, Inc.*, No. 14-cv-02298, 2015 WL 1650900, at *2 (D. Colo. Apr. 8, 2015) ("[T]his court has previously recognized that a trademark plaintiff has a substantial interest in avoiding continuing injury due to a defendant's alleged violation of its trademark."); *Profitstreams LLC v. Ameranth, Inc.*, No. 11-cv-01710, 2011 WL 5024912, at *2 (D. Colo. Oct. 21, 2011) (finding the first *String Cheese* factor to weigh against the imposition of a stay, because the plaintiff's "failure-to-pay damages would continue to accrue").

As to the second factor, Defendant Schindele argues that, in the absence of a stay, he "will be at a severe disadvantage and will be unable to properly defend himself." (Mot. 8.) He contends that he "will not be available for discussion related to depositions of other parties and witnesses;" that he "will be unable to defend himself at trial;" and that he will be unable "to properly respond to discovery." (*Id.* at 8-9.) Defendant maintains that, under such circumstances, he would be deprived of his constitutional due process rights. (*Id.* at 10.) Aside from conclusory statements, however, Defendant Schindele has not submitted any evidence to

6

show that his incarceration has substantially impeded his ability to mount an adequate defense in this case. *See Weatherspoon v. Miller*, No. 11-cv-00312, 2011 WL 1485935, at *2 (D. Colo. Apr. 19, 2011) ("Without affidavits, documentation or detailed explanation, the Court cannot determine the extent of the burden on the Movants and cannot justify imposing an indefinite stay of the proceedings in this matter."). Also, it is worth noting that this court adjudicates lawsuits involving inmate litigants on a regular basis. Further, Defendant Schindele has not explained why less drastic measures, such as modifications to the scheduling order, or extensions of time to respond to specific discovery requests, could not adequately protect his pertinent interests in this case. The second factor, therefore, also weighs against the imposition of a stay.

Finally, neither the convenience to the court, nor the interests of nonparties and the public, warrant a stay of this matter. Indeed, staying this case for twelve months will substantially delay the ultimate resolution, with adverse consequences such as a decrease in evidentiary quality and witness availability. Further, it is inconvenient to the court's ability to schedule and manage its docket, if the proceedings are delayed. *See Aspen Corporations, Inc. v. Gorman*, No. 18-cv-01325, 2019 WL 266313, at *2 (D. Colo. Jan. 18, 2019) ("[D]elays resulting from a stay of discovery inconvenience courts by making the docket less predictable and, hence, less manageable[.]") (internal quotations omitted). And, there is no certainty that Defendant Schindele will even be released from prison within one year. Indeed, if a one-year stay were imposed, but Defendant Schindele remained in prison at the end of that period, the court would potentially be forced to revisit this issue again. *See Charles Schwab & Co., Inc. v. Highwater Wealth Mgmt., LLC*, No. 17-cv-00803, 2017 WL 3503353, at *4 (D. Colo. Aug. 16, 2017) (finding that a stay of the entire case, pending resolution of an arbitration hearing, was not

warranted, because, among other things, it was "uncertain" as to when the hearing would actually take place). Finally, the general public's interest in this case is an efficient and just resolution. Avoiding wasteful efforts by the court and the litigants serves that purpose.

Therefore, considering the *String Cheese* factors together, as well as the strong interests of controlling the court's docket and the fair and speedy administration of justice, a stay is not warranted in this case.

Accordingly, it is

**ORDERED** that Defendant Schindele's "Motion to Stay Proceedings" (Doc. No. 40) is **DENIED**.

This 16th day of September, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge